Tamara Zavaliyenko, Esq.
California State Bar # 229266
Email: info@settlementcovid19.com
4521 Campus Drive, Suite 325
Irvine, California 92612
Phone: (949) 656-7233
Facsimile: (949) 656-7233

*Attorney for Plaintiffs and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOURQUE CPA'S AND ADVISORS, INC.; GD SERVICES LLC; J&M CONSULTING LP; NH APARTMENTS, INC; RURAL HOUSING PRESERVATION FOUNDATION; on behalf of themselves, and all those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>THE PEOPLE'S REPUBLIC OF CHINA; THE PEOPLE'S LIBERATION ARMY; MINISTRY OF EMERGENCY MANAGEMENT OF THE PEOPLE'S REPUBLIC OF CHINA; NATIONAL HEALTH COMMISSION OF THE PEOPLE'S REPUBLIC OF CHINA; MINISTRY OF CIVIL AFFAIRS OF THE PEOPLE'S REPUBLIC OF CHINA; THE PEOPLE'S GOVERNMENT OF HUBEI PROVINCE; THE WUHAN INSTITUTE OF VIROLOGY; THE PEOPLE'S GOVERNMENT OF CITY OF WUHAN, CHINA; and JOHN DOES 1-50, inclusive<br><br>Defendants. | Case No. 8:20-cv-00597<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiffs, BOURQUE CPAS + ADVISORS, INC., GD SERVICES LLC, J&M CONSULTING LP, NH APARTMENTS, INC., RURAL HOUSING PRESERVATION FOUNDATION, (collectively, "Named Plaintiffs"), on behalf of themselves and all those similarly situated, and by and through their undersigned counsel, hereby sue THE PEOPLE'S REPUBLIC OF CHINA ("the PRC"); THE PEOPLE'S LIBERATION ARMY; MINISTRY OF EMERGENCY MANAGEMENT OF THE PEOPLE'S REPUBLIC OF CHINA; NATIONAL HEALTH COMMISSION OF THE PEOPLE'S REPUBLIC OF CHINA; MINISTRY OF CIVIL AFFAIRS OF THE PEOPLE'S REPUBLIC OF CHINA; THE PEOPLE'S GOVERNMENT OF HUBEI PROVINCE; THE WUHAN INSTITUTE OF VIROLOGY; and THE PEOPLE'S GOVERNMENT OF CITY OF WUHAN, CHINA (collectively "Defendants"), for damages, and further allege as follows:

## INTRODUCTION

1.      This is class action brought by the Named Plaintiffs, small business owners in the State of California, for damages suffered as a result of the Coronavirus pandemic, against Defendants, the People's Republic of China and its various government entities, which handled and managed the response to the discovery of the Coronavirus, and, upon information and belief, engaged in a cover-up of the Coronavirus pandemic in China generally, and within Hubei Province and the City of Wuhan, thereby causing and/or contributing to the subsequent spread of the coronavirus all over the world, including to the United States of America ("US") and the State of California.

2.      The PRC is the world's most populated country, as well as the world's second largest economy. As a result, the PRC has substantial economic and trading relationships with almost every country in the world, including the US.

3.      In 2019, the US trade with the PRC was over $555 Billion.

4.      The extensive business, trade and tourism relationships between the PRC and the US require accurate disclosure and transparency between the two counties, especially on any health issue or condition, which can result in a pandemic.

5.      The world, including the US and the State of California, has been devastated in recent months by the new strain of the coronavirus, more commonly known as COVID-19, and the mutations that have occurred with this "novel" virus.

6.      Upon information and belief, this "novel" coronavirus began in Wuhan, Hubei Province, China on or about November 17, 2019, and subsequently spread throughout the world, including to the US and the State of California.  Reported information suggests that the first case occurred in the Huanan Wholesale Market, in Wuhan, China.

7.      Shortly after November 17, 2019, the PRC and the other Defendants knew, or should have known, that COVID-19 was a "novel" dangerous, contagious, and deadly virus because many Chinese citizens who contracted the virus were getting very sick, and some were dying.  Moreover, DNA samples taken from these very sick and dying people confirmed that this was a "novel" virus for which there was no vaccine and no known cure.

8.      Shortly after November 17, 2019, the PRC and the other Defendants received credible scientific evidence confirming that this "novel" virus, which first emerged in Wuhan, China was extremely contagious, deadly and capable of causing a world pandemic.

9.      Upon receiving this disturbing scientific evidence and data, the PRC and the other Defendants had a responsibility to its own citizens, the World Health Organization ('WHO'), and the international community, including the citizens and businesses of the United States including residents of the State of California, to immediately disclose this material data and evidence.

10.      Instead of disclosing this evidence, the PRC and the other Defendants engaged in a campaign of misinformation, cover up and falsehoods. Upon information and belief, they engaged in a campaign of intimidating and even arresting Chinese doctors, scientists and reporters who tried to alert the public about this dangerous and deadly "novel" coronavirus.

11.      As a result of the actions and inactions of the PRC and the other Defendants, the international community, including the named Plaintiffs, did not know about the severity and dangers of this deadly "novel" virus.

12.      When the coronavirus reached the US, it quickly led to an unprecedented and

escalating health crisis. This virus has infected many thousands of Americans, has made many of those Americans very sick and has already caused a growing number of documented deaths.  As of March 25, 2020, over 62,852 people in the US have been infected with this new coronavirus, and over 460,065 in the world have been infected.

13.    COVID-19 is so contagious that the infections have grown at an exponential rate. It took several weeks for the first 100,000 cases (most of which were in China) to occur; the next 100,000 global cases occurred in the following 12 days; and it took just 3 days for the documented cases to go from 200,000 to 300,000 cases.

14.    The PRC and the other Defendants knew that COVID-19 was dangerous and capable of causing a pandemic, yet acted slowly in their response, and/or intentionally covered it up for their own self-interest and economic benefit.

15.    The conduct and misconduct of the Defendants has caused substantial monetary and related damages to the Named Plaintiffs and Class Members. These damages exceed hundreds of billions of dollars, and such damages will only increase in the future, as many California businesses have been ordered closed or are working at reduced capacity. The Defendants' conduct and misconduct has caused and will continue to cause the named Plaintiffs and Class Members, to suffer, among other things, reduced revenues, reduced profits and/or the closure of many US and State of California "small businesses."

**PARTIES**

16.    Bourque CPAs + Advisors, Inc. ("Bourque CPAS"), is a California corporation, engaged in the business of accounting and business consulting. Currently, this company is experiencing a substantial reduction in income and profits because of the coronavirus.

17.    GD Services LLC ("GDS") is a California limited liability company, in the property management business. Currently, this company is experiencing a substantial reduction in income and profits because of the coronavirus.

18.    J&M Consulting LP ("J&M") is a California limited partnership, in the property management business. Currently, this company is experiencing a substantial reduction in income and profits because of the coronavirus.

19.    NH Apartments, Inc. ("NH") is a California corporation, in the property management business. Currently, this company is experiencing a substantial reduction in income and profits because of the coronavirus.

20.    Rural Housing Preservation Foundation ("RHPF") is a California non-profit corporation, in the business of providing low income housing. RHPF depends upon donations from the public from their available funds and discretionary income. Currently, RHPF is experiencing a substantial reduction in income and profits because of the coronavirus.

21.    Plaintiff Class Members are all "small businesses" in the State of California, United States which are similarly situated to Named Plaintiffs. The State of California defines "small business"  as an independently owned and operated business that is not dominant in its field of operation, the principal office of which is located in California, the officers of which are domiciled in California, and which, together with affiliates, has 100 or fewer employees, and average annual gross receipts of fifteen million dollars ($15,000,000) or less over the previous three years, or is a manufacturer, with 100 or fewer employees. Prior to the COVID-19 pandemic, California "small businesses" employed about 7 million people.

22.    The People's Republic of China ("the PRC") is a foreign nation.

23.    The People's Liberation Army ("PLA") is the official military arm of the PRC.

24.    Ministry of Emergency Management of the People's Republic of China is the administrative government body that coordinates emergency management, including health issues, within the PRC

25.    The National Health Commission of the People's Republic of China is the administrative government body/executive department under the PRC which is responsible for formulating health policies in Mainland China.

26.    Ministry of Civil Affairs of the People's Republic of China is the administrative government body responsible for social and administrative affairs.

27.    The People's Government of Hubei Province ("Hubei Province") is a foreign province and administrative head of Hubei Province in the PRC.

28.    The Wuhan Institute of Virology is a biological laboratory about 20 miles from

1    the center of the city of Wuhan in China, which the Plaintiffs and members of the class and

2    subclasses allege includes an illegal biological weapons laboratory

3        29.    The People's Government of City of Wuhan, China ("Wuhan") is a foreign city

4    and administrative head of the City of Wuhan, China.

5                                    **JURISDICTION AND VENUE**

6        30.    This Court has subject matter jurisdiction over this class action pursuant to the

7    Class Action Fairness Act of 2005 (CAFA) and 28 U.S.C. § 1332(d). The matter in

8    controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; there

9    exists minimal diversity between parties; and there are approximately 4 Million "small

10   businesses" in California, which are putative class members.

11       31.    This Court further has jurisdiction under the Foreign Sovereign Immunities Act

12   (FSIA) of 1976, 28 U.S.C. §§ 1602 et seq., and particularly the exceptions of § 1605(a) (2)

13   (for acts outside the territory of the United States in connection with a commercial activity of

14   the Defendants, that cause a direct effect in the United States), and § 1605(a) (5) (for money

15   damages for loss of property, occurring in the United States and caused by the tortious acts or

16   omissions of Defendants, or of any official or employee of Defendants while acting within

17   the scope of his office or employment).

18       32.    There is no exception to jurisdiction under the FSIA for "discretionary acts"

19   because the Defendants have acted clearly contrary to the precepts of humanity, transparency,

20   and/or their conduct is prohibited by the internal laws of the PRC and its provincial and

21   municipal governments. On March 19, 2020 the PRC admitted that the Wuhan police acted

22   improperly when they intimidated and forced Dr. Li Wenliang, who was a whistle blower

23   that exposed the existence and dangers of this "novel" virus, to sign a false statement. This

24   coerced false statement in effect had Dr. Wenliang deny that a "novel" virus had been

25   discovered and was killing people in China. Then, the Defendants used this false statement to

26   mislead the international community, including the US, regarding the seriousness of this

27   "novel" virus and the immense catastrophe that it could cause to countries, people and

28   businesses all over the world.

33.     This Court has personal jurisdiction over the Defendants because they have caused tortious harm to the Named Plaintiffs and Class Members, throughout the United States, the State of California, and in this District, and have sufficient contacts in California and in this District to render the exercise of jurisdiction by this Court permissible.

34.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (2) and (c) because a substantial part of the events or omissions giving rise to Named Plaintiffs' and Class Members' claims occurred in this District.

35.     All conditions precedent to the filing of this lawsuit have been met and/or waived by the conduct of Defendants.

## CLASS ACTION STATUS

36.     California has been one of the states hit disproportionately hard by the COVID-19 pandemic. The number of unemployed, under-employed and disrupted small businesses in California is in the hundreds of thousands and growing rapidly.

37.     California, among other states and localities, which are increasing minute by minute, has ordered the closure of all schools and all non-essential businesses, and has issued a "Shelter in Place" order.  Sports events and other public gatherings also have all been cancelled and the list is too long to set forth in this Complaint.

38.     On Sunday, March 15, 2020, the Centers for Disease Control recommended cancellation of all gatherings of 50 people or more for 8 weeks to slow the spread of the coronavirus pandemic.  Madeline Holcombe and Dakin Andone, "The CDC recommends organizers cancel or postpone events with 50 people or more for 8 weeks," CNN, March 15, 2020, accessible at https://www.cnn.com/2020/03/15/health/us-coronavirus-sunday-updates/index.html

39.     For this and other reasons related to the COVID-19 pandemic, American stock markets are in a free fall and have already lost about 30% of their value, which more severe losses expected to continue as part of a stock market crash.

40.     The claims of the Named Plaintiffs and of each member of the class and sub-classes are in substance all the same, differing only in the amount of lost income, other

expenses, lost income, and other consequences of the medical and economic disruption.

41.   The Named Plaintiffs assert National and California Non-Commercial Tort Classes against Defendants pursuant to Rules 23(a), (b) (1), (b) (2), (b) (3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and all those similarly situated. The Named Plaintiffs and Class Plaintiffs define the National and California Non-Commercial Tort Class as follows: All "small businesses" in the State of California, which have sustained, among other things, financial/monetary damages and/or losses related to the outbreak of the COVID-19 virus.

42.   The Named Plaintiffs further assert National and California Commercial Classes, pursuant to Rules 23(a), (b) (1), (b) (2), (b) (3) and/or 23(c) (4) of the Federal Rules of Civil Procedure, on behalf of themselves and all those similarly situated. The Named Plaintiffs and Class Plaintiffs define the National and California Commercial Class as follows: All "small businesses" in the State of California, which have sustained, among other things, financial/monetary damages and/or losses related to the outbreak of the COVID-19.

43.   Excluded from the Class are the following: (1) the Defendants, and any parent, subsidiary or affiliate organizations, and the officers, directors, agents, servants, or employees of same, and the members of the immediate family of any such person; (2) all small businesses in the US who timely opt out of this proceeding; (3) all small businesses that have been given valid releases releasing Defendants from the claims asserted in this Class Action Complaint; (4) all persons who, prior to the filing of this Complaint, have filed a non - class action claim against the Defendants (or any of them) for the claims asserted in this Complaint; and (5) the judge(s) to whom this case is assigned, their employees and clerks, and immediate family members.

44.   The Class is sufficiently numerous, and as a result, the joinder of all members of the Class in a single action is impracticable. There are approximately 4 Million Small Businesses in the State of California, and a substantial majority of these small businesses and any of their affiliated entities, have been, or will be affected financially, in the immediate future by Defendants' wrongful conduct.

45.     There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class. Among these common questions of law and fact are the following:

        a.     Whether Defendants' conduct was negligent and/or reckless;

        b.     Whether Defendants' conduct was clearly contrary to the precepts of humanity;

        c.     Whether Defendants' conduct violated established laws within the PRC;

        d.     Whether the PRC's bio-weapons labs are ultra-hazardous activities, and caused the release of the virus;

        e.     Whether the PRC violated the rules and regulations of the WHO; and

        f.     Whether the PRC engaged in an intentional cover-up in order for the international community and the Plaintiff Class not to discover what was taking place with the COVID-19 pandemic.

46.     The claims of the Named Plaintiffs are typical of the claims of each member of the Class in that, among other issues:

        a.     The Named Plaintiffs' claims arise from the same course of conduct of Defendants giving rise to the claims of other Class Members;

        b.     The claims of the Named Plaintiffs and each member of the Class are based upon the same legal theories;

        c.     The Named Plaintiffs and each member of the Class have an interest in prevailing on the same legal claims;

        d.     The types of financial damages incurred by the Named Plaintiffs are similar to those incurred by the other Class Members; and

        e.     The defenses asserted by Defendants will be very similar, if not identical, as to all Named Plaintiffs and Class Members.

47.     The Named Plaintiffs are adequate representatives of the Class in which they participate because, together with their legal counsel, each will fairly and adequately protect the interests of the Class. Named Plaintiffs and all Class Members have a similar, if not

1  identical interest in obtaining the relief sought. Proof of the claims of the Named Plaintiffs

2  will also establish the claims of the Class. Named Plaintiffs are not subject to any unique

3  defenses. Named Plaintiffs have no known conflict with the Class and are committed to the

4  vigorous prosecution of this action.

5       48.    Counsel will fairly and adequately protect the interests of the Class.

6       49.    The various claims asserted in this action are certifiable under the provisions of

7  Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against

8  individual Class Members would create a risk of inconsistent or varying adjudications with

9  respect to individual Class Members that would establish incompatible standards of conduct

10  for the party opposing the Classes, or adjudications with respect to individual Class Members

11  that, as a practical matter, would be dispositive of the interests of the other Class Members

12  who are not parties to the individual adjudications, or would substantially impair or impede

13  their ability to protect their interests.

14       50.    Plaintiffs' legal claims are properly certified pursuant to Rule 23(b) (3) in that:

15  (1) a class action is superior in this case to other methods of dispute resolution; (2) the Class

16  Members have an interest in class adjudication rather than individual adjudication because of

17  their overlapping rights; (3) it is highly desirable to concentrate the resolution of these claims

18  in this single forum because it would be difficult and highly unlikely that the affected Class

19  Members would protect their rights on their own without this class action case; (4) the

20  disparity between the resources of Defendants and Class Members would make prosecution

21  of individual actions a financial hardship on Class Members; (5) the prosecution of separate

22  actions by individual Class Members, or the individual joinder of all Class Members is

23  impractical and would create a massive and unnecessary burden on the Court's resources; and

24  (6) Management of the class will be efficient and far superior to the management of

25  individual lawsuits. Moreover, currently, the undersigned counsel is unaware of any other

26  pending litigation regarding this controversy with respect to the specific California small

27  business claims asserted in this case.

28       51.    The issues particularly common to the Class Members' claims, some of which

1  are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c) (4), as

2  resolution of these issues would materially advance the litigation, and class resolution of

3  these issues is superior to repeated litigation of these issues in separate trials.

4      52.    The Named Plaintiffs have retained the below counsel to represent them in this

5  lawsuit, and are obligated to pay said counsel reasonable attorneys' fees provided recovery is

6  obtained.

7  **GENERAL ALLEGATIONS**

8  FACTS COMMON TO ALL COUNTS

9  **The Outbreak of COVID-19**

10      53.    According to the US Center for Disease Control ("CDC"), as of March 25,

11  2020, there are over 460,065 confirmed worldwide cases, over 20,828 deaths, and an

12  exponentially large quantity of undiagnosed cases. These numbers are expected to increase

13  exponentially in the coming weeks and months.

14      54.    According to the CDC, as of March 25, 2020, there are over 62,852 confirmed

15  cases in the US and already 885 deaths. In the state of California alone, there are over 2,662

16  COVID-19 related illnesses and already 58 deaths. These numbers are expected to rise

17  exponentially in the coming hours, days and weeks, as more people get tested in the US.

18      55.    Over half of California "small businesses" have been forced to close or have

19  been forced to substantially reduce their operations. These numbers are expected to rise as

20  Governors, County Commissioners and City Mayors all over the US are ordering small

21  Businesses to close or reduce their operations.

22      56.    This "novel" virus causes cold and flu like symptoms that often lead to

23  pneumonia and severe respiratory distress that can be fatal.  It is many times more deadly

24  than the seasonal flu virus.  Significant to note, this "novel" virus has already mutated several

25  times.

26      57.    Between November 17, 2019 - when the first case of this new virus was first

27  detected until March 11, 2020, when the WHO declared the COVID-19 outbreak a pandemic,

28  the PRC and the other Defendants intentionally mislead the international community,

including the Named Plaintiffs, about the coronavirus and its devastating medical and economic effects. Moreover, the Defendants covered-up the severity of this heath pandemic. In order to effectuate this cover-up, it is believed that Defendants intimidated doctors, scientists and journalists; ordered the destruction of medical testing and data, which would have exposed Defendants' attempted cover-up to the public. While Defendants took theses actions, the Defendants told the public that "everything was under control". In truth, the medical crisis was raging out of control.

58.    The unimaginable death toll from countries like Italy has demonstrated what will happen in the United States if the federal and state governments do not take the drastic actions described herein.

59.    In an attempt to slow down the COVID-19 pandemic, the United States and California governments have imposed executive orders, directing all individuals to stay at home, unless they are involved in operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/indentifying-critical-infrastructure-during-covid-19. As such, the COVID-19 pandemic has brought the country and California economies to a halt, bringing with it devastating economic impacts. Unfortunately, despite all of their actions, to date, COVID-19 cases as well as the death toll from this infection keep growing, with hospitals bracing for a deluge of cases.

### The Effects of the COVID-19 Outbreak and China's Role

60.    Because of the rising threats, the United States has barred plane travel from China, the European Union and other countries. The New York Stock Exchange has suffered its worst losses since the 2008 "great recession." US stocks have lost almost 28% of their value, resulting in almost 5 Trillion Dollars in lost wealth. Conventions, functions and events have been cancelled. The playing seasons for all professional sports in the US have been suspended indefinitely. Hotels and casinos in most states, including in California, have been closed. Shows and cinemas have been closed. Many restaurants have been closed. Tourism has been decimated. Millions of small businesses are closed. For the businesses that remain

1   open, many of them cannot get supplies or equipment, and/or they have few customers. Many

2   supplies like toilet paper, hand sanitizers, face masks, and medicines are difficult to find.

3       61.    Public functions and events are being cancelled one after another, including the

4   shuttering of sporting events, Broadway shows, and other gatherings. Hotels have shuttered,

5   several cruise lines have suspended operations for the next two months, and the travel

6   industry overall is being gutted by cancellations. Businesses are suffering because of both

7   disruptions to their supply chains and a scarcity of patrons and customers. With many

8   businesses closed and many people laid off, both residential and commercial tenants are

9   unable to meet their rent obligations. The public is in panic, wiping out stocks of toilet paper,

10  hand sanitizers, face masks, and other items. And it will go on and on.

11      62.    President Trump issued an Executive Order banning "banning foreign nationals

12  other than the immediate family of US citizens and permanent residents who have travelled in

13  China in the past 14 days" from entering the US effective February 2, 2020. However, the

14  PRC and Defendants, from November 17, 2019 to February 2, 2020, allowed thousands of

15  people from Wuhan to travel to the US, although they knew, or should have known, that there

16  was a high likelihood that many of these people carried the very contagious "novel" virus and

17  would contaminate many people living in the US

18      63.    The PRC and other Defendants, acting from their own self-interest and

19  economic benefit, and looking to protect their place as a super-power, failed to report the

20  outbreak as quickly as they could have, underreported cases, underreported severity of the

21  virus, underreported the deaths caused by COVID-19, and initially failed to contain the

22  outbreak despite knowing the seriousness of the situation.

23      64.    The PRC and other Defendants exaggerated the good news, while suppressing

24  bad news related to the virus. The discovery of a "novel" contagious and deadly virus that

25  started in Wuhan, China was horrible and material news. International treaties, agreements

26  and common decency required the PRC and the other defendants to inform the international

27  community shortly after November 17, 2019 about this "novel" extremely dangerous, highly

28  contagious and deadly virus. They did not. Instead, they engaged in a campaign of

1  falsehoods, misinformation, cover-up and destruction of evidence.

2       The Defendants also committed the following acts and omissions:

3      a.    People in Wuhan started to die from the virus in December, 2019 and the

4          Defendants suppressed and/or under-reported this information;

5      b.    On December 27, 2019, Dr. Zhang Jixian, at the Hubei Provincial Hospital of

6          Integrated Chinese and Western Medicine, sounded the alarm about a "new'

7          disease that had already affected 180 patients, and the Defendants suppressed

8          this information;

9      c.    From December 26-30, 2019, the first evidence of the new virus was revealed

10          through Wuhan patient data, which had been sent to multiple Chinese genomics

11          companies. During this time period, the Hubei Health Commission ordered one

12          of the genomics companies to stop testing on the new virus and to destroy all

13          the data. Simultaneously, the Defendants pressured the press not to report these

14          facts; it took 17 days from the time Chinese researchers discovered the

15          COVID19 genome sequence for Defendants to report the findings to their

16          worldwide peers.

17      d.    On December 30, 2020, Dr. Li Wenliang ("Dr. Li") sent a message to his

18          former classmates about a "novel" virus that was infecting Wuhan residents and

19          urged them to be careful.

20      e.    On December 31, 2019, which was almost 1 ½ months after the first reported

21          case, Chinese officials finally alerted the WHO about pneumonia with an

22          "unknown cause" affecting the health of people in Wuhan. This disclosure was

23          misleading because the destroyed data showed that the real cause was a newly

24          discovered virus and it was far too late;

25      f.    On December 31, 2019, the Chinese Internet authorities started to censor all

26          social media references to this new disease and the government's response;

27      g.    On December 31, 2019, the Wuhan seafood market, where the virus allegedly

28          first broke out, was finally closed. Under the guise of "disinfecting" the area,

governmental authorities intentionally failed to have doctors inspect the area and failed to swab individual animal cages or to draw blood from the workers in order to determine the "real" source of the virus;

h.    On January 1, 2020, eight doctors, including Dr. Li, who had been disclosing the "novel" virus, were detained and questioned by the police, who condemned them for "making false statements on the internet" about a new virus; these eight doctors were censored from speaking about the outbreak and its dangers;

i.    On January 3, 2020, China's National Health Commission issued a gag order on matters regarding the "novel" virus, and ordered pneumonia samples from affected people to be moved to designated facilities or destroyed. The same Commission ordered medical institutions not to publish anything about this "unknown disease"; the Defendants knew COVID-19 was spread human to human by January 3rd, but told the public otherwise, and would not confirm the ease of human to human transmission until January 20th, after the virus had already spread beyond China; despite early January deaths, they would only attribute the deaths to pneumonia, instead of the virus, and continued to downplay its dangers.

j.    On January 5, 2020, Professor Zhang Yongzhen of the Shanghai Public Health Clinical Center provided the genomic sequence of the "novel" virus to Chinese authorities;

k.    On January 9, 2020, the WHO released a statement about the cluster of pneumonia cases in Wuhan, suggesting the cases were attributable to a new coronavirus, because they ruled out SARS, MERS, influenza, bird flu, and other known pathogens;

l.    On January 9, 2020, after being outed by the WHO, the Defendants finally announced the first "official death" of a coronavirus patient and that 59 additional people had coronavirus in Wuhan, but the Defendants continued to downplay the dangers and assured the public that the situation was not serious

1      and that everything was under control.

2      m.     On January 10, 2020, the Defendants' agent and health expert, Wang Guangfa,

3      told the Chinese state's China Central Television that the pneumonia was

4      "under control" and downplayed the virus as a "mild condition";

5      n.     On January 14, 2020, the WHO disclosed that there may have been human to

6      human transmission of the "new" virus;

7      o.     On January 14, 2020, Chinese police started detaining journalists trying to

8      report the outbreak at the Wuhan Jinyintan Hospital. These journalists were also

9      forced to delete any footages taken, and they were forced to give their phones to

10     the police;

11     p.     On January 15, 2020, Li Qun, the head of the Chinese CDC (Center for Disease

12     Control) mislead the public by stating that the risk of human to human

13     transmission "was low";

14     q.     On January 18, 2020, despite the known COVID-19 crisis and its high level of

15     contamination, plus ease of human to human transmission of the virus, the City

16     of Wuhan held a "potluck" public dinner for over 40,000 families to try and

17     break a world record;

18     r.     On January 20, 2020, Dr. Zhong Nanshan, a top Chinese doctor who previously

19     helped fight the SARS epidemic, stated during a television interview that

20     COVID-19 was spreading from person to person. This same doctor later stated

21     that if the Defendant PRC had acted in December 2019 or early January 2020 to

22     contain the virus, "the number of sick would have been greatly reduced";

23     s.     On January 20, 2020, the Mayor of Wuhan Zhou Xianwang admitted that

24     Beijing's rules kept him from disclosing information about COVID-19.

25     Therefore, the Defendants' failure to be transparent with the public, and failure

26     to confront the COVID-19 crisis by ordering a quarantine for almost two

27     months, was central to a pandemic occurring because the infection spread in an

28     exponential manner. According to scientists almost 99% of the world's

infections could have been avoided if the Defendants had acted properly in early December, 2019;

t.   President of PRC Xi Jinping originally stated that he directed officials to contain the virus on January 7th, but it has since emerged that he did not do that, and that he actually waited until January 22nd to do direct containment, and still did not make any efforts public until it was too late. President Jinping's position on January 22, 2020 is directly contradicted by the statements of the local Wuhan governmental officials;

u.   On January 23, 2020, the City of Wuhan was ordered locked down. However, 5 million people had already left the city without being screened by that time, and nobody knows where these 5 million people travelled to;

v.   On January 30, 2020, the first person to person case in the US is reported. This involved the husband of a Chicago woman who brought the infection back from Wuhan, China;

w.   On February 6, 2020, to further control the narrative of "everything is under control", President Jinping orders China's Internet watch dog to further control social media platforms. On that same day, journalist and attorney Chen Qiushi, disappeared in Wuhan after posting footage from overcrowded hospitals and panicking families;

x.   On February 7, 2020, Dr. Li Wenliang, who was one of the first whistle blowers regarding CORVID-19, died. The PRC disclosed that Dr. Wenliang allegedly died after contracting coronavirus from a patient that he was treating. Several civil rights groups have alleged that Dr. Wenliang was killed in order to silence him;

y.   On February 9, 2020, journalist Fang Bin mysteriously disappeared after posting videos about the CORVID-19 crisis in Wuhan.

z.   On February 15, 2020, President Jinping further tightened control over the internet. On that same day Chinese activist Xu Zhiyong was arrested for writing

an essay that called upon President Jinping to resign for his poor handling of the coronavirus pandemic;

aa.  On February 16, 2020, Chinese Professor Xu Zhangrun was arrested and banned from using the internet after he published an article stating that: "That the coronavirus epidemic has revealed the rotten core of Chinese governance";

bb.  On March 11, 2020, the WHO declared that CORVID- 19 was a pandemic after it had spread to over 100 countries;

cc.  On March 14, 2020, another Chinese reporter, Ren Zhiqiang, disappeared after he criticized President Jinping's handling of the coronavirus epidemic;

dd.  On March 17, 2020, the PRC ordered journalists from the New York Times, Wall Street Journal and Washington Post to leave the country after they continued to report the out of control pandemic in China and that country's citizens' complaints;

ee.  On March 19, 2020, after there was wide spread unrest in the PRC, the government publicly announced that the Wuhan police had acted improperly when they had previously stated that whistle blower Dr. Li Wenliang was "spreading rumors" about the coronavirus in early January, 2020. However, even this 'admission' was misleading because Dr. Wenliang first complained in late December, 2019 and his statements pertained to the existence of a "new" and deadly virus; and

ff.  As of March 22, 2020, the PRC's narrative is that the pandemic is under control in China and there are very few new deaths in China related to COVID-19. However, this PRC narrative is contradicted by Chinese Billionaire Guo Wengui who has stated that the Chinese government continues to underreport illnesses and deaths because they are currently using portable (or mobile) crematoriums to cremate up to 1,200 bodies a day. Significantly, Mr. Wengui's claims are supported by many scientists, who seriously doubt that the PRC, which has over 1.3 Billion people, and had over 100,000 infected people only a

1    few weeks ago, suddenly experienced a miracle that has resulted in "no new

2    deaths".

3    65.    It is reported that there are only two known Chinese government bio-weapon

4    research labs in the PRC and one of them — the National Biosafety Laboratory at the Wuhan

5    Institute of Virology — is located in Wuhan, and is close in proximity to the Huanan Seafood

6    Wholesale Market, where COVID-19 allegedly originated. This lab is considered China's

7    only "level 4" microbiology lab – meaning it deals with the deadliest viruses. A plausible

8    alternative explanation is that COVID-19 "escaped" from the Wuhan lab because of lax

9    controls, and/or that Chinese researchers sold lab animals to the marketplace in question,

10   something researchers have been known to do in China, instead of cremating them as PRC

11   law requires.

12   66.    The Defendants' conduct has set off an unprecedented world-wide pandemic,

13   which has caused panic, illnesses, deaths, and a financial meltdown that will result in a global

14   recession potentially worse than the Great Depression. This global recession will further

15   negatively impact the US and the Plaintiff Class Members.

16   67.    The Defendants' conduct and misconduct has been egregious, contrary to the

17   precepts of humanity, and/or is prohibited by the internal laws of the PRC and its provincial

18   and municipal governments, and/or international laws and treaties.

19   68.    Because of the Defendants' conduct and misconduct, as described herein, has

20   set off a world-wide pandemic assault that is triggering community by community and

21   causing widespread injuries and damages. The Named Plaintiffs and Class Members who

22   own or operate businesses, have sustained, and they will continue to sustain, substantial

23   damages, including monetary loss in the trillions of dollars.

24   69.    This pandemic has already adversely affected the Plaintiffs and Class Plaintiffs

25   in the United States, specifically in the State of California.

26   70.    All condition precedents to the filing of this class action lawsuit has been

27   satisfied, met, and/or waived.

28

# FIRST CAUSE OF ACTION

## NEGLIGENCE

**(Named Plaintiffs and each Class Member; Against all Defendants)**

71.     The Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 70, as if fully set forth herein, and further allege:

72.     Defendants owed a duty to small businesses in the United States and in the State of California, including the Named Plaintiffs and the Class Members, to not act intentionally or negligently in their management and handling of the COVID-19 outbreak, so that COVID-19 would not unreasonably spread as it did to the United States, including the States of California.

73.     Defendants breached their duty to Plaintiffs and the Class Members, by, among other things:

a.     Failing to admit their knowledge of the dangers of the virus, its lethalness, and the ease of human to human transmission;

b.     Failing to contain the virus in its early stages when they knew, or should have known, of its dangers and ease of transmission;

c.     Failing to contain the virus more quickly when the spread was apparent;

d.     Failing to restrict public gatherings of more than 40,000 Wuhan families when they knew, or should have known, of the dangers of the virus and ease of transmission;

e.     Failure of the governmental entities to adequately and reasonably supervise the outbreak and contain its effects after the medical community warned them about these dangers;

f.     Failing to provide adequate and reasonable warnings to Plaintiffs and the Class Members when they knew or should have known of the dangers described herein;

g.     Disseminating materials and statements that intentionally provided false information to people within and outside China;

h.   Destroying scientific evidence and data, so the Plaintiffs and the Plaintiff class members could not know or learn about what was really occurring in China;

i.   Disseminating false information to the US, which made it impossible to know or learn what was really taking place in China with COVID-19; and

j.   Engaging in a cover-up regarding the severity of the COVID-19 pandemic, which made it impossible for the US and the Plaintiffs to know, or learn, what was really occurring in China, and how this could affect their businesses.

74.   But for Defendants' wrongful and negligent actions, as well as duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' business would not have been harmed.

75.   There is a temporal and close causal connection between Defendants' actions described herein and the harm suffered, or the risk of imminent harm suffered by Plaintiffs and the Class.

76.   As a direct and proximate result of Defendants' breaches as described herein, Named Plaintiffs and the members of the classes have been injured and harmed, and have suffered damages and economic harms.

77.   Defendants knew or should have known that their actions, described herein, would cause global harm to businesses, including to Plaintiffs and Class Members and that the risk of such harm was highly likely. Defendants acted in conscious disregard of such foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members warranting the imposition of exemplary or punitive damages against Defendants.

## SECOND CAUSE OF ACTION

### STRICT LIABILITY FOR CONDUCTING ULTRAHAZARDOUS ACTIVITY

**(Named Plaintiffs and each Class Member; Against all Defendants)**

78.   Named Plaintiffs and Plaintiff Class Members adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 77, as if fully set forth herein,

and further allege:

79.     Upon information and belief, the only two registered bio-weapons laboratories in the PRC are located in the City of Wuhan, and one of them, the National Biosafety Laboratory at the Wuhan Institute of Virology, is the only declared site in China capable of working with deadly viruses, and handles, according to various press accounts, covert military applications of viruses.

80.     In February, 2020 after the PRC's President Xi Jinping finally began speaking openly about the outbreak and its spread, it was reported by the media that the Chinese Ministry of Science and Technology released a new directive titled: "Instructions on strengthening biosecurity management in microbiology labs that handle advanced viruses like the novel coronavirus." Clearly, Defendants knew or should have known about containment issues within their microbiology labs, such as the ones operating in Wuhan, and that those labs handling viruses such as COVID-19. 69. The Wuhan laboratories are in close proximity to the "wild animal" marketplace where COVID-19 is alleged to have originated.

81.     Furthermore, it has been reported in the media that some Chinese researchers are in the habit of selling their laboratory animals to street vendors after they have finished experimenting on them, instead of properly disposing of infected animals by cremation, as the law requires.

82.     The conduct of Defendants in connection with activities at the National Biosafety Laboratory constitutes an ultra-hazardous activity under US and California law because:

a.      The conduct necessarily involves a risk of serious harm to the person, land, property or chattels of others which cannot be eliminated by the exercise of the utmost care;

b.      The activities at the lab are not a matter of common usage; and c. The activity is not of substantial value to any community.

83.     The harms alleged herein are the result of Defendants' ultra-hazardous activity.

84.     The harms suffered by the Plaintiffs and the Class Members are within the

abnormal risk of harm posed by Defendants' ultra-hazardous activity.

85.     By conducting this ultra-hazardous activity, the Defendants' acts and omissions demonstrate a conscious disregard or indifference to the rights, welfare, safety, and property rights of Plaintiffs and the Class Members.

86.     But for Defendants' wrongful and negligent duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' business would not have been harmed.

87.     There is a temporal and close causal connection between Defendants' actions described herein and the harm suffered, or the risk of imminent harm suffered by Plaintiffs and the Class.

88.     Defendants knew or should have known that their actions, described herein, would cause global harm to businesses, including to Plaintiffs and Class Members and that the risk of such harm was highly likely. Defendants acted in conscious disregard of such foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members warranting the imposition of exemplary or punitive damages against Defendants.

89.     As a direct and proximate result of Defendants' ultra-hazardous activity, as described herein, the Plaintiffs and the Class Members have suffered damages and economic loses, and seek actual, special, exemplary, punitive and compensatory damages.

90.     Because the Defendants engaged in ultra-hazardous activity that caused approximately $180 Billion Dollars in damages to Plaintiffs and the Class Members, Defendants are strictly liable to them for their damages.

## THIRD CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

**(Named Plaintiffs and each Class Member Against all Defendants).**

91.     Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 90, as if fully set forth herein, and further allege.

92.     Due to the negligence described herein, Named Plaintiffs and the members of

the classes have suffered discernable physical manifestations and injuries of trauma from the negligent conduct, including, but not limited, to physical pains, headaches, anxiety, and insomnia.

93.     These physical injuries and manifestations have been directly caused by the psychological trauma suffered as a result of business and economic loss, due to Defendant's egregious conduct, and its effect on the Named Plaintiffs.

94.     Named Plaintiffs and the members of the classes have been in close proximity to the negligent conduct causing their injuries.

95.     As a direct and proximate result of Defendants' conduct as described herein, Named Plaintiffs and the members of the classes have been injured and harmed, and have suffered damages and economic harms, and seek actual, special, and compensatory damages.

## FOURTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(Named Plaintiffs and each Class Member Against all Defendants).**

96.     Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 95, as if fully set forth herein, and further allege:

97.     Alternatively to the negligence described herein, Defendants acted intentionally and/or recklessly out of their own economic self-interest, and knew or should have known that emotional distress would likely result from their conduct.

98.     Defendants' conduct, as described herein, was outrageous, going beyond all bounds of decency, and is utterly intolerable in a civilized world.

99.     Defendants' conduct has caused severe emotional distress to the Named Plaintiffs and the members of the classes.

100.    As a direct and proximate result of Defendants' intentional and reckless conduct, as described herein, Named Plaintiffs and the members of the classes have been injured and harmed, and have suffered damages and economic harms, and seek actual, special, and compensatory damages.

# FIFTH CAUSE OF ACTION

## PUBLIC NUISANCE

### (Named Plaintiffs and each Class Member Against all Defendants).

101.   The Named Plaintiffs adopt, incorporate by reference, and restate the foregoing allegations in paragraphs 1 through 100, as if fully set forth herein, and further allege:

102.   Defendants, and more specifically the PRC, Hubei Province and the City of Wuhan, had a duty to the public at large, including Named Plaintiffs and members of the class, not to use the property where the Wuhan Institute of Virology is located, and/or create a condition that harms public health.

103.   Defendants, and more specifically the PRC, Hubei Province and the City of Wuhan, had a duty to the public at large, including Named Plaintiffs and members of the classes, not to use the city and province as, essentially a giant Petri dish, continuing to conduct extraordinarily large public gatherings, knowing of the dangers of the virus and the ease of transmission.

104.   Defendants, and more specifically the PRC, Hubei Province and the City of Wuhan, breached that duty through the conduct described herein, including by allowing COVID19 to escape into Wuhan and/or flourish in Wuhan and Hubei, and thereby become a pandemic.

105.   Defendants' conduct has created a nuisance that violated rights, subverted public order in the United States and California, is indecent and immoral, and has caused annoyance, inconvenience and damage to the public, including the small businesses operated by the Named Plaintiffs and the members of the classes.

106.   The Defendants' conduct and created nuisance has resulted in unreasonable injury to Plaintiffs and the Class Members.

107.   But for Defendants' wrongful and negligent duties owed to Plaintiffs and Class Members, Plaintiffs' and Class Members' business would not have been harmed.

108.   There is a temporal and close causal connection between Defendants' actions described herein and the harm suffered, or the risk of imminent harm suffered by Plaintiffs

1   and the Class.

2       109.   Defendants knew or should have known that their actions, described herein,

3   would cause global harm to businesses, including to Plaintiffs and Class Members and that

4   the risk of such harm was highly likely. Defendants acted in conscious disregard of such

5   foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and

6   acts were negligent, knowing and willful, and/or wanton and reckless with respect to the

7   rights of Plaintiffs and Class Members warranting the imposition of exemplary or punitive

8   damages against Defendants.

9       110.   As a direct and proximate result of Defendants' nuisance, Plaintiffs and the

10  Class Members will continue to suffer harms in the form of lost revenue and lost profits, and

11  such harms will require ongoing future abatement if Plaintiffs' and the Class Members'

12  businesses are to be operational, functional, and profitable.

13                          **DEMAND FOR JURY TRIAL**

14      Named Plaintiffs, on their own behalf and on behalf the Classes and Sub-Classes,

15  demand a trial by jury on all issues so triable.

16                           **PRAYER FOR RELIEF**

17      WHEREFORE, the Named Plaintiffs, BOURQUE CPAS + ADVISORS, INC., GD

18  SERVICES LLC, J&M CONSULTING LP, NH APARTMENTS, INC., RURAL HOUSING

19  PRESERVATION FOUNDATION, individually and as putative Class Representatives,

20  demand judgment against Defendants, and pray for relief as follows:

21      a.   Certification of the Class under Federal Rule of Civil Procedure 23 and

22           appointment of Plaintiffs as representatives of the respective Class and their

23           undersigned counsel as Class counsel;

24      b.   An order requiring that Defendants pay compensatory and other damages to

25           Plaintiffs and the Class Members, for their economic and non-economic

26           damages and losses identified herein, to the full extent permitted by the law;

27      c.   An order awarding all damages allowed by any governing statutes or other

28           governing law;

d.  An order awarding exemplary or punitive damages related to Defendants' fraudulent, extreme, outrageous, malicious, oppressive conduct that was performed in conscious disregard of the health and safety of American citizens and California residents.

e.  Statutory pre-judgment and post-judgment interest on any amounts awarded;

g.  Costs and expenses in this litigation, including, but not limited to, expert fees, filing fees, and reasonable attorneys' fees; and

h.  Such other relief as the Court may deem just and proper.

Dated this 26th day of March, 2020.


 */s/ Tamara Zavaliyenko, Esq.*

TAMARA ZAVALIYENKO, ESQ.

California Bar No. 229266

4521 Campus Drive, # 325

Irvine, CA 92612

Telephone: (949) 656-7233

Facsimile: (949) 656-7233

info@settlementcovid19.com